IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-24-00402-JD |
| ) | |
| ALIAS BAH DE ZA LAWRENCE ) | |
| SOUDRY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is the parties' Joint Restitution Statement [Doc. No. 70]. The parties agree on the restitution amount, the waiver of interest, and a payment schedule to begin upon Defendant Alias Bah De Za Lawrence Soudry's release from custody, but dispute whether restitution payments should be deferred during Mr. Soudry's term of imprisonment. The Court addresses that disputed issue and denies Mr. Soudry's request to delay restitution payments until after his release from custody, concluding that the government's proposed payment schedule is appropriate for the reasons stated below.

**I.     BACKGROUND**

Mr. Soudry entered a plea of guilty on June 4, 2025, to the one-count Indictment charging him with involuntary manslaughter, in violation of 18 U.S.C. §§ 1112(a) and 1153. The Final Presentence Report ("PSR") [Doc. No. 48] was filed on September 2, 2025. Mr. Soudry raised no objection to the imposition of restitution and did not dispute paragraphs 13, 14, 15, 16, 76, and 77 of the PSR, each of which related to restitution. At the sentencing hearing on November 18, 2025, the Court sentenced Mr. Soudry to 60

months' imprisonment followed by 2 years of supervised release. *See* Judgment [Doc. No. 58 at 2–3]. The Court also recommended that Mr. Soudry participate in the Federal Bureau of Prisons ("BOP") Inmate Financial Responsibility Program ("IFRP"). *Id.* at 2. At the hearing, counsel for Mr. Soudry asked that the restitution hearing be deferred to see if the parties could reach an agreement as to restitution. As a result, the Court continued the restitution hearing to January 27, 2026. *Id.* at 6; *see also* [Doc. No. 57 at 2]. The Court instructed the parties to file a notice with the Court 14 days in advance of the hearing outlining their positions regarding restitution. [Doc. No. 57 at 2]. The parties were also directed to confer 7 days in advance of the 14-day deadline to see if an agreement as to restitution could be reached. *Id.*

On January 20, 2026, the Court sua sponte, and after the parties failed to meet their deadlines, extended the deadline for filing positions on restitution to January 21 at noon. [Doc. No. 67]. The parties filed separate notices on January 21. *See* [Doc. Nos. 68, 69]. Mr. Soudry's later filed notice indicated the parties agreed as to restitution and no hearing was necessary. [Doc. No. 69 at 1].

Subsequently, the parties filed their Joint Restitution Statement advising that the parties had conferred regarding restitution and agreed to the following: (1) that restitution should be ordered in the amount of $10,004.93 paid to the Estate of Raquel Anderson; (2) that restitution should be ordered in the amount of $10,575.50 paid to L.M.; (3) that no interest be imposed; and (4) that a payment schedule should be imposed in which Mr. Soudry is ordered to pay the greater of $100 or 10 percent of his earnings, beginning 30 days after his release from custody. [Doc. No. 70 at 1]. The United States requested that

the Court also impose a payment schedule while Mr. Soudry is incarcerated at the rate of 10 percent of his earnings. *Id.* Mr. Soudry objects and requests that a payment schedule not be imposed until his release from custody. *Id.* Finally, the parties agreed that a restitution hearing was "not necessary as the parties do not have argument regarding the sole contested issue and defer to the judgment of this Court." *Id.* at 2. The parties jointly requested that the Court strike the hearing pursuant to their agreement, and the Court therefore struck the hearing. *Id.*; *see also* 1/26/2026 docket text entry.

## II.    LEGAL STANDARD

Restitution in this case may be ordered under 18 U.S.C. § 3663(a)(1)(A). Here, the parties agree on the amount of restitution owed to the victims. After determining the amount of restitution owed, the Court "shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). District courts are "granted considerable discretion in structuring a payment schedule." *United States v. Overholt*, 307 F.3d 1231, 1255 (10th Cir. 2002). When setting a payment schedule, the Court must consider "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; projected earnings and other income of the defendant; and any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2). The defendant bears the burden of demonstrating his financial resources. *Id.* § 3664(e).

"If . . . a restitution order . . . permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court, but shall be

the shortest time in which full payment can reasonably be made." 18 U.S.C. § 3572(d)(2). Where the payment schedule is in installments, "the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule." *Id.* § 3572(d)(1).

The BOP has established a program known as the IFRP to assist sentenced inmates in meeting their court-ordered financial obligations. 28 C.F.R. § 545.10; BOP Program Statement P5380.08 (Aug. 15, 2005); *see also Durham v. Hood*, 140 F. App'x 783, 785 (10th Cir. 2005) (unpublished) (explaining that IFRP "requires participating inmates to commit a percentage of their prison employment earnings toward the payment of court-ordered restitution"). Although participation in the program is voluntary, IFRP's incentive structure strongly encourages compliance by linking participation to benefits and opportunities within the BOP.[1] *See, e.g.*, 28 C.F.R. §§ 545.10, 545.11(d). Inmates who refuse or fail to comply are placed on IFRP "REFUSE" status, which will result in the loss of privileges and opportunities. *See id.* § 545.11(d); *see also* P5380.08 at 14–15. For example, an inmate in "REFUSE" status "will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay," "will not be assigned to any work

---

[1] The Tenth Circuit has consistently recognized that BOP's IFRP is constitutional when properly administered and has rejected due process and other constitutional challenges to the program. *See, e.g.*, *O'Banion v. Matevousian*, 835 F. App'x 347, 350 (10th Cir. 2020) (unpublished) (explaining that IFRP has been implemented in other circuits and "has withstood constitutional challenge," noting that challenges to IFRP's constitutionality did not raise a protected liberty interest) (citing *United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993)); *Durham*, 140 F. App'x at 785 (explaining that the benefits that can be denied by one's refusal to participate in IFRP are not constitutionally guaranteed).

4

detail outside the secure perimeter of the facility," "will not be placed in UNICOR,"[2] will "be subject to a monthly commissary spending limitation," and "will not receive an incentive for participation in residential drug treatment programs." 28 C.F.R. §§ 545.11(d)(3), (4), (5), (6), and (11). As part of the initial classification process, a BOP staff member will help the inmate in developing a financial plan for meeting his court-ordered financial obligations, and at subsequent program reviews, BOP staff will consider that inmate's efforts to fulfill his obligations.[3] *See* 28 C.F.R. § 545.10.

Although the framework set forth in IFRP is not binding on the Court, it offers a useful indication of what constitutes a reasonable payment plan for an incarcerated individual. In developing an inmate's financial plan, the unit team sets a minimum monthly payment based on the type of job the inmate has. 28 C.F.R. § 545.11(b). Because UNICOR jobs pay significantly more than regular prison jobs, the BOP imposes a higher minimum for UNICOR jobs. *See id.* Specifically, inmates assigned to UNICOR grades 1 through 4 are expected to allocate not less than 50 percent of their monthly pay to the payment process. *Id.* § 545.11(b)(2). For non-UNICOR inmates and UNICOR grade 5 inmates, the standard minimum payment is $25.00 per quarter; however, the required payment may exceed that amount depending on an inmate's specific financial

---

[2] UNICOR is the trade name for Federal Prison Industries, Inc., "whose mission is to provide work simulation programs and training opportunities for inmates confined in Federal correctional facilities." 28 C.F.R. § 345.11(a).

[3] A unit team can postpone a newly committed inmate's IFRP participation, if staff determines he has limited financial resources. Generally, an inmate is considered to have limited financial resources when he does not have sufficient institution earnings to make a minimum IFRP payment of $25.00 per quarter. *See* P5380.08 at 4.

obligations and available institutional and community resources. *Id.* § 545.11(b)(1). There are five pay grades for UNICOR work, with grade 5 being the lowest level and rates for graded inmate workers are currently as follows: (1) Grade 1 is $1.15; (2) Grade 2 is $0.92; (3) Grade 3 is $0.69; (4) Grade 4 is $0.46; and (5) Grade 5 is $0.23. *See* BOP Program Statement P8120.03 (Feb. 23, 2017) at 25–26; *see also* 28 C.F.R. § 345.51(a) (explaining that inmate pay is at "five levels ranging from 5th grade pay (lowest) to 1st grade pay (highest)"). "Sentenced inmates who are physically and mentally able to work are required to participate in the [BOP's] work program." 28 C.F.R. § 545.20(a). Further, "[t]he scheduled workday for an inmate in a federal institution ordinarily consists of a minimum of seven hours." 28 C.F.R. § 545.24(a).

### III. DISCUSSION

The United States requests that the Court direct Mr. Soudry to make payments during incarceration at a rate of 10 percent of his earnings. Mr. Soudry is opposed and asks that the Court defer his restitution obligation until 30 days after his release from his 60-month sentence. Mr. Soudry's total agreed restitution obligation is $20,580.43.

Mr. Soudry will be eligible for employment in BOP custody, and the Court has recommended that he participate in the IFRP. At this stage, it is uncertain what jobs will be available to Mr. Soudry and what wages they will provide. Certainly, prison employment generally pays very little, particularly if the inmate does not secure a UNICOR job. According to P8120.03, first-time inmates, like Mr. Soudry, enter at a pay grade five and may be required to successfully complete a training course before promotion to pay grade four. BOP P8120.03 at 17. Assuming Mr. Soudry started at a

6

Grade 5 position, his monthly earnings would be about $32.20.[4] Ten percent of his monthly earnings would be $3.22. Although IFRP establishes a minimum quarterly payment of $25.00 (approximately $8.33 per month), an inmate earning $32.20 per month can justifiably contribute 10 percent of his earnings, or $3.22 per month, toward restitution. This payment would be substantially lower than the standard minimum, but it is consistent with IFRP's guiding principle of considering the inmate's ability to pay under 28 C.F.R. § 545.11(b).

Mr. Soudry did not object to the analysis of his financial situation in the PSR. Nor did he provide any additional information about his financial status or obligations. He does not contend that he is physically unable to work within the prison system, that there are insufficient opportunities to work, or that the payment schedule proposed by the United States is disproportionate to prison wages. *See, e.g.*, *United States v. Wilson*, 416 F.3d 1164, 1171 (10th Cir. 2005) (concluding that the district court had not abused its discretion by requiring the defendant to make restitution payments during his term of imprisonment, given the speculative nature of the defendant's concerns); *see also* 18 U.S.C. § 3664(e) (stating that the defendant has the burden to demonstrate his financial resources). Mr. Soudry is 21 years old and a high school graduate. *See* PSR at Identifying

---

[4] By way of example, if Mr. Soudry works 7 hours per day at an hourly rate of $0.23 for five days per week, his earnings are calculated as follows: Daily earnings are determined by multiplying hours worked by the hourly rate, yielding $1.61 per day (7 x $0.23 = $1.61). Weekly earnings, assuming a five-day workweek, are $8.05. Multiplying weekly earnings by four weeks per month results in total monthly earnings of $32.20.

Data. He reports that he is in good overall physical health. *Id.* ¶ 44. His employment history includes experience as a warehouse worker. *Id.* ¶ 52.

"[T]he primary goal of restitution is to compensate [crime victims] for the entire losses they have suffered." *United States v. Salti*, 59 F.4th 1050, 1056 (10th Cir. 2023). It is intended to begin promptly, even if payments during incarceration are limited in amount. Accordingly, Mr. Soudry's request to delay restitution payments until after his release from custody is denied. Mr. Soudry is ordered to make payments of 10 percent of his quarterly earnings during his term of imprisonment. In setting this payment schedule, the Court has considered Mr. Soudry's financial resources and assets, his projected earnings and other income, and his financial responsibilities. 18 U.S.C. § 3664(f)(2).[5]

## IV. CONCLUSION

Based on the foregoing, the Court denies Mr. Soudry's request to delay restitution payments until after his release from custody. The Court will enter an amended judgment addressing restitution that is consistent with this Order and the parties' agreement.

IT IS SO ORDERED this 13th day of February 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[5] No party addresses whether the payment should be a percentage of monthly or quarterly earnings while in custody. Although restitution was deferred in its original judgment, the placeholder regarding payment schedule suggests the percentage would be based on quarterly earnings, *see* [Doc. No. 58 at 7], and neither side has objected to the percentage being calculated on quarterly instead of monthly earnings during the term of imprisonment. Regardless, based on its consideration of the factors and its analysis above, the Court finds it to be appropriate here that the payment schedule use quarterly earnings during the term of imprisonment.